# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

BERTRAM COMMUNICATIONS LLC,

        Appellant,

v.                                                                  Case No. 09-CV-1037

NETWURX, INC.,

        Appellee.

_____

## ORDER

The present case is brought forth before this court on appeal from the United States Bankruptcy Court for the Eastern District of Wisconsin. The appellant, Bertram Communications LLC ("Bertram"), has moved this court to grant a Temporary Restraining Order (TRO), prohibiting any sale of the appellee, Netwurx, Inc. ("Netwurx"). The court will briefly recount the facts animating the appellant's motion before resolving the legal question the motion begs.

## FACTUAL BACKGROUND

On June 5, 2008, Netwurx, an internet wholesaler operating out of Hartford, Wisconsin, filed a voluntary petition for Chapter 11 reorganization. Its petition revealed that among its creditors was the appellant, Bertram, another internet provider who had sold its services to the debtor and had entertained purchasing Netwurx prior to the bankruptcy filing.[1] Nearly four months later, on October 2, 2008,

---

[1] The record of the proceedings in the bankruptcy court reveal that Bertram was Netwurx's main competitor and that the relationship between the two companies was anything but smooth.

the debtor filed a Chapter 11 Small Business Plan ("plan"), providing a basic framework for how the business would be reorganized. After several disputes regarding the amount that the debtor owed the appellant, Netwurx filed an amended plan on February 25, 2009. A little over a month later, the debtor again amended and submitted its plan to the bankruptcy court on March 31, 2009, with an implicit deadline to confirm the plan by May 15, 2009.

In the wake of Netwurx submitting its second amended plan and corresponding disclosure statement, several creditors raised concerns regarding the values of the debt the appellee disclosed to the court. As a result, on May 8, 2009, the debtor submitted another amendment, attempting to clarify its previous plan. On that same date, the bankruptcy court entered an order extending the time in which it could confirm a proposed plan to June 17, 2009. On June 2, 2009, Bertram requested that the bankruptcy court delay the confirmation of the plan pending resolution of the claims made by another of Netwurx's creditors. Three days later, the bankruptcy court, acting on the requests of Bertram and other creditors, moved the confirmation hearing to June 25, 2009, noting that the delay was "due to the adjournment of a major claim objection dispute and at the request of certain creditors." On June 10, 2009, the debtor moved the court to further extend the deadline to confirm its latest plan to July 24, 2009, as the debtor and its major creditors were actively resolving disputed claims. The court, for the same reasons given for the first extensions of the confirmation date, granted the debtor's motion

-2-

Case 2:09-cv-01037-JPS   Filed 11/13/09   Page 2 of 10   Document 7

on June 11, 2009. On July 10, 2009, Netwurx informed the court that the two major outstanding claims, which were previously disputed, had been settled amongst the relevant parties, clearing the way for the final resolution of the case.

Notwithstanding the resolution of the disputed claims, the bankruptcy process became significantly more complicated on July 29, 2009, with Bertram's filing of a competing plan to allow the appellant to purchase Netwurx. The debtor immediately objected to Bertram's plan as being untimely. The bankruptcy court, however, rejected the debtor's objections and allowed, with the glowing approval of Bertram's attorney,[2] to have both the debtor's plan and the appellant's plan be subject to confirmation. As a result of the recent settlement of the major claims against the debtor and because of the new Bertram plan, the court, on July 13, 2009, pushed back the schedule in the case, setting a hearing for August 11, 2009, to allow for the approval of disclosure statements, solicitation letters, and ballot forms to facilitate the proper consideration of both plans. Bertram voiced no objection to the new deadline set by the bankruptcy court.

At the August 11, 2009 hearing, the court, rejecting Bertram's desire for a late September or October confirmation date, opted to set a confirmation hearing for September 17, 2009, allowing for the debtor to resolve a major application for administrative expenses submitted by another claimant the day before the hearing. On September 9, 2009, for the first time in the course of the litigation, Bertram

---

[2] At the hearing, Bertram's counsel maintained that "both plans should stand."

argued that Netwurx's proposed plan was invalid because it was untimely under the strictures of 11 U.S.C. §§ 1121(e)(3) & 1129(e). A week later and one day before the confirmation hearing, Netwurx submitted a modification on its plan, allowing an angel investor to receive 51% of Netwurx's equity, leaving the existing equity holders with 49% of the business. At the confirmation hearing on September 17, 2009, the bankruptcy court approved the debtor's plan over Bertram's plan. In confirming Netwurx's plan, the court found that the debtor's plan, like Bertram's plan, would pay all of the debtor's creditors, with having the added benefit[3] of allowing the current Netwurx equity holders to retain a near majority share of the business. Under Bertram's plan, Netwurx's current equity holders would have no remaining stake in the company following the reorganization. On September 25, 2009, the bankruptcy court rejected Bertram's contentions that the debtor's plan was untimely under 11 U.S.C. §§ 1121(e)(3) & 1129(e).

At a hearing on November 4, 2009, the bankruptcy court indicated that Bertram's motion to stay the final confirmation of Netwurx's plan pending appeal pursuant to Bankruptcy Rule 8005 would be denied at a hearing on November 13, 2009. As such, Bertram has opted to appeal the decision of the bankruptcy court to this court. The appellant has moved this court to issue a TRO preventing the sale of Netwurx until the court can entertain the underlying issues propelling the appeal. In their motions to the court, Bertram argues that the bankruptcy court was

---

[3]The appellee estimates that the angel investor's offer is worth $800,000 more than Bertram's offer.

prohibited by law from accepting the debtor's plan because the plan was submitted beyond the deadlines prescribed by law and that a TRO is necessary to prevent the sale of Netwurx and the mooting of Bertram's appeal.

## DISCUSSION

This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158. Moreover, a bankruptcy court's "findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*." *In re Midway Airlines*, 383 F.3d 663, 668 (7th Cir. 2004). The ultimate issue this court must resolve is whether a TRO in the form of a stay of the sale of Netwurx pending appeal is warranted. When considering whether to grant a stay pending appeal pursuant to Bankruptcy Rule 8005,[4] the court must consider the following: (1) whether the movant is likely to succeed on the merits of the appeal; (2) whether the movant will suffer irreparable injury absent a stay; (3) whether a stay would substantially harm other parties to the litigation; and (4) whether a stay is in the public interest. *In re Forty-Eight Insulations, Inc.,* 114 F.3d 1294, 1300 (7th Cir. 1997). However, "applicants for preliminary relief have threshold burdens to demonstrate the first two factors: they must show that they have some likelihood of success on the merits and that they will suffer irreparable harm if the requested relief is denied" before the court will entertain the other factors. *Id.*

---

[4] Given that the TRO requested is for a stay of sale, the court will proceed using the Seventh Circuit's case law on the issuance of stays of sales in bankruptcy litigation.

-5-

**A.    Likelihood of Success on the Merits**

The only argument raised by Bertram on appeal is that the plan submitted by Netwurx was not done in a timely manner and, thus, should not have been approved by the bankruptcy court. Both sides concur that Netwurx is a "small business debtor" as defined by 11 U.S.C. § 101(51C). As such, the debtor is subject to the restrictions set forth in 11 U.S.C. § 1121(e). That section, in relevant part, requires that in a "small business case" a "plan and a disclosure statement" must be filed "no later than 300 days after the date of the order for relief." 11 U.S.C. § 1121(e)(2).

Here, the debtor submitted its plan in a timely fashion, as it submitted a plan on March 31, 2009, a day before the 300-day deadline prescribed by § 1121(e) expired. While the debtor submitted amendments to its plan after the 300-day deadline, the appellant has provided no relevant case law to indicate that the debtor cannot amend its plan after the 300-day deadline has passed, let alone provided this court with any indication as to the relief that should be afforded if the debtor violates the Bankruptcy Code by filing an amended plan after deadline prescribed by § 1121(e). Courts have been very willing to allow amended plans to be filed after the 300 day deadline, with one court equating the standard for allowing an amended *plan* to be filed after the Bankruptcy Code's deadline to the relatively minimal standard for allowing an amended *complaint* to be filed after the deadline imposed by a statute of limitations has passed. *In re Fla. Coastal Airlines, Inc.*, 361 B.R. 286, 291 (Bankr. S.D. Fla. 2007) (holding that, if the amended plan arose from the "same

-6-

factual occurrence" as the original plan, the debtor's amendment would not violate the Code's 300-day deadline). As the court in *Florida Coastal Airlines* noted, it would be "peculiar indeed if the ability to amend a reorganization plan to deal with changed circumstances [after the 300-day deadline has passed] had been prohibited by Congress." *Id.* As such, because the debtor's amendments related to its original plan, Netwurx submitted its plan in a timely fashion.

The strict timeline imposed in small business bankruptcy cases is not solely related to the *filing* of a reorganization plan. A bankruptcy court is also required to *confirm* "a plan that . . . is filed in accordance with section 1121(e) not later than 45 days after the plan is filed." 11 U.S.C. § 1129(e). However, the 45-day time period can be extended if: (A) the "debtor, after providing notice to the parties in interest . . . demonstrates by a preponderance of the evidence that it is more likely than not that the court will confirm a plan within a reasonable period of time"; (B) "a new deadline is imposed at the time the extension is granted"; and (C) the order extending time is "signed before the deadline has expired." 11 U.S.C. § 1121(e)(3).

Here, the confirmation of the debtor's plan conformed with the requirements of the Bankruptcy Code. The debtor's plan was submitted on March 31, 2009, allowing for a deadline for confirmation of May 15, 2009. However, before the May 15, 2009 deadline occurred, the court, finding by a preponderance of the evidence that the court would confirm the plan within a reasonable period of time, imposed a new deadline for confirmation on June 17, 2009. Admittedly, the bankruptcy court

approved several new confirmation deadlines, pushing back previously set dates, but no deadline was ever changed after the prior date had passed. Moreover, the appellant does not contest that a preponderance of the evidence continually demonstrated that the bankruptcy court would be able to confirm a plan in a reasonable period of time. In fact, the only argument that the appellant makes is that the debtor did not *file* a motion to request the extensions of time to confirm the plan. However, the appellant is reading into § 1121(e)(3) a requirement that simply does not exist. The Bankruptcy Code does not require that a debtor *file* a motion to extend the confirmation deadline; rather, the Code merely insists that the debtor *demonstrate* that the court will be able to confirm a plan. Here, the issue of whether a plan would be confirmed was never an issue at all, as multiple parties were competing to try to acquire Netwurx's business.[5] Section 1121(e)(3) itself does not specify how the debtor must "demonstrate" that the court will confirm a plan within a reasonable period of time, nor does the appellant direct this court to any case law[6] indicating that the court cannot find, *sua sponte*, that the debtor has demonstrated

---

[5] The appellee rightfully notes that the purpose of the stringent requirements of the small business provisions of the Bankruptcy Code are to ensure that bankruptcy courts take an active role in providing oversight in small business bankruptcy cases, "which are often the least likely to reorganize successfully." *In re Darby Gen. Contr., Inc.*, 410 B.R. 136, 143 (Bankr. E.D.N.Y. 2009). Judicially creating a requirement that the debtor must actually file a motion to extend the time needed for confirmation in a case where successful reorganization was all but assured would not only be an abuse of this court's powers, but would also undermine the purpose of the small business provisions of the Code.

[6] The appellant repeatedly cites to *In re Save Our Springs (S.O.S.) Alliance, Inc.,* 388 B.R. 202, 226 (Bankr. W.D. Tex. 2008) to support its contention. However, in that case, the court merely stated that "filing and obtaining" a hearing was the usual route for a debtor to obtain an extension of time to confirm the reorganization plan, not the exclusive route. *Id.* ("Thus, *in most instances* the debtor will have to act so that the confirmation hearing itself can be scheduled, conducted and concluded, and an order entered, within 45 days of the date the plan is filed") (emphasis added). Nothing in that opinion indicates that the court cannot find *sua sponte* that the debtor has met its burden of proving that the confirmation is likely.

that the court will be able to confirm a restructuring plan. In fact, the Bankruptcy Code is quite explicit that a bankruptcy court may "issue any order . . . necessary or appropriate to carry out the provisions of this title" and that "no provision of [the Code] providing for the raising of an issue . . . shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court . . . rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). As such, confirmation occurred within the strictures of the Bankruptcy Code, and there is no likelihood that Bertram will succeed on the merits of its appeal.[7]

**B.      Irreparable Injury**

Bertram argues that it will suffer irreparable injury from the sale of Netwurx, in that allowing a sale to proceed would effectively moot Bertram's appeal. However, the court agrees with the appellee that Bertram's harm is illusory, at best. If the confirmation of the sale of Netwurx is reversed, all this means is that the debtor's plan will not be confirmed. This does not guarantee the confirmation of Bertram's plan. Such a confirmation seems unlikely in light of the bankruptcy court's July 13, 2009 order allowing outside competing plans to be submitted post the 300-day deadline and in light of the existence of an angel investor who is willing to invest far more money than Bertram has offered to acquire Netwurx. Whatever harm would

---

[7] Moreover, the court is persuaded that even if Bertram's creative interpretation of the Bankruptcy Code's deadlines for submitting and confirming a reorganization plan is correct, that Bertram has waived its argument by repeatedly failing to raise the issue of the tardiness of the debtor's plan. See *In re Chicago, M., S. P. & P. R. Co.*, 756 F.2d 508, 513 (7th Cir. 1985) (holding that a party waives any objection to a party's compliance with bankruptcy deadline by not raising it in a timely manner).

result for Bertram from the sale of Netwurx to the angel investor is purely wishful and speculative.

Due to the findings and rationale discussed herein, the court finds that Bertram has failed to meet its burden of showing a substantial likelihood of success on the merits or of irreparable injury absent a stay to warrant issuing a stay of the sale of Netwurx. Because of the lack of any reason to issue the stay, the court need not inquire into the harm imposed on other parties by the stay or whether the stay is in the public's interest. *In re Forty-Eight Insulations*, 115 F.3d at 1301 ("However, if the movant does not make the requisite showings on either of these two factors, the court's inquiry into the balance of harms is unnecessary, and the stay should be denied without further analysis.")

Accordingly,

**IT IS ORDERED** that the appellant's motion for a temporary restraining order (Docket #3) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 13th day of November, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

-10-

Case 2:09-cv-01037-JPS   Filed 11/13/09   Page 10 of 10   Document 7